Argued April 8, affirmed July 1, petition for rehearing denied
August 3, 1976

## NELSON, *Appellant,*
*v.*
## SALEM HOSPITAL, *Respondent.*

551 P2d 476

*Charles D. Burt,* Salem, argued the cause for appellant. With him on the brief were Douglas E. Kaufman, and Brown, Burt & Swanson, Salem.

*Don A. Dickey,* Salem, argued the cause for respondent. With him on the brief were David A. Rhoten, and Rhoten, Rhoten & Speerstra, Salem.

Before McAllister, Presiding Justice, and Denecke,* Holman, Tongue, Howell and Bryson, Justices.

PER CURIAM.

*Chief Justice when case was decided.

**PER CURIAM.**

This is a wrongful death action arising out of the death of Edward Smith while he was a patient at the defendant hospital. The plaintiff, administrator of Smith's estate, appeals from a judgment entered on a jury verdict for defendant.

Six days before his death, Smith had undergone surgery to remove a brain tumor. The tumor proved to be malignant and most, but not all, of the tumor was removed during the operation. The surgeon testified that Smith's wife was informed of the results of the surgery and was told that her husband's life expectancy was six months to a year. There was no evidence that Smith himself had been told by either his wife or his doctor that the tumor was malignant or that his life expectancy was limited. Following the operation, Smith was not despondent and appeared to be making a normal recovery from the surgery.

The ward where Smith was a patient was located on the fifth floor of the hospital. At the end of the hall was a heavy metal fire door which led into a vestibule, which in turn led to a stairway. Also in the vestibule was an open, window-like aperture, approximately 36 inches above the floor, which overlooked a small concrete courtyard on the ground floor. Shortly after midnight on July 22, 1969, the deceased's body was found lying in the courtyard.

Smith's wife had been allowed to stay with him overnight at the hospital until the night he died. When she left that evening, he asked her to bring some playing cards with her when she returned the next day. Later that evening, a few minutes before his death, Smith was seen walking in the hall near the fire door leading to the vestibule. The open window in the vestibule was visible through the glass in the fire door. There was testimony that he appeared nervous and restless. When questioned by one of the nurses, he stated that he was not in pain; that he merely wanted

to walk. The nurse then asked him to go back to bed, and he was observed proceeding toward his room. There was also testimony that he seemed alert and oriented and that he appeared to be steady on his feet.

Plaintiff's complaint alleged that the defendant was negligent in refusing to permit decedent's wife to stay with him the night of his death; in failing to instruct the nurses of the possible emotional or physical effects of the surgery; in failing to restrain decedent from entering any portion of the hospital where he could not be supervised and attended; in allowing decedent to leave his bed; and in failing to prevent the "fall."

The defendant alleged the plaintiff was contributorily negligent as follows:

> "At the time and place referred to in plaintiff's amended complaint, plaintiff decedent was himself negligent in failing to exercise care and caution for his own safety by voluntarily leaving a place of safety, to-wit: his hospital bed and proceeding onto an exterior upper balcony of defendant Hospital and jumping to his death."

The plaintiff's only assignment of error is that the trial court should not have submitted defendant's theory of contributory negligence—that the deceased voluntarily took his own life—to the jury. If we accepted plaintiff's argument, it would mean that the jury would have been precluded from finding that Smith committed suicide.

■ We conclude that the trial court correctly submitted this defense to the jury. The issue presented by the facts was entirely predicated on whether the decedent took his own life or whether he accidentally fell out of the open window in the vestibule.

■ It is true that this court has held that there is a presumption against suicide. However, this presumption is not a conclusive one. As was stated in *U.S. National Bank v. Lloyd's,* 239 Or 298, 318, 382 P2d 851 (1964):

> "* * * The jury should be told that the presumption

expresses a *generality* only, i.e., that humans do not *ordinarily* take their own lives. The presumption does not purport to describe the state of mind of all persons in every circumstance. In the particular case before it the jury is free to conclude from the evidence adduced that the deceased overcame the normal revulsion against suicide."

It is true that there was no direct evidence that the decedent committed suicide, or even that he knew that he had a malignant brain tumor. In fact, plaintiff's evidence indicates that there was no discussion between decedent and his wife or the doctor regarding the results of the surgery. Such evidence, however, does not preclude the possibility that Smith learned of his condition from some other source or deduced it from the circumstances around him.

Considering all the circumstances outlined above, we conclude that there was sufficient evidence to allow the submission of the defense alleged in defendant's answer to the jury.

Affirmed.